**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DR. WILLIAM M. POLLACK, | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | 13 C 7653 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Michael T. Mason |
| v. | ) | |
| | ) | |
| INCROWD, INC., | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF CLASS SETTLEMENT**</u>

Plaintiff Dr. William M. Pollack ("Plaintiff") individually and as representative of a Settlement Class of similarly situated persons, by class counsel, Edelman, Combs, Latturner & Goodwin, LLC, respectfully submits the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement with defendant InCrowd, Inc. ("InCrowd") or "Defendant"). This Court preliminarily approved the Agreement on December 8, 2014.

The Court is advised that KCC Class Action Services, LLC ("KCC") attempted to deliver the notice and claim form via facsimile in the form approved by the Court to the same persons/entities that were on records provided by InCrowd whom it sent or intended to send advertising facsimiles promoting its goods or services for sale that gave rise to this lawsuit ("Fax List") The Fax List also identified the number of fax transmissions sent or intended to be sent to the corresponding fax number.

The Fax List contained 426,772 unique fax numbers. (*Dkt. No. 71*) Of the 426,772 fax numbers, 239,065 were successfully sent the notice via facsimile, and 187,707 transmissions failed.

1

Three attempts were made to transmit the notice by facsimile to those numbers on the Fax List that did not receive the notice successfully. *(Dkt. No.71)*

KCC also set up a website, [www.InCrowdFaxSettlement.com](www.InCrowdFaxSettlement.com) through which Class Members were able to submit Claim Forms using unique user IDs and passwords that were printed on their notices and claim forms. The website also provides information about the settlement and also allows Class Members to view and download copies of the Class Notices, Claim Form, Preliminary Approval Order, and the Settlement Agreement, excluding exhibits. The website also contained the deadlines to submit Claim Forms and to opt out or object to the settlement, the date of the Final Approval Hearing, frequently asked questions and answers and contact information for Class Counsel. *(Dkt. No. 71)*

Plaintiff's counsel posted the Class Notice and Settlement Agreement, excluding exhibits, on their firm's website, [www.edcombs.com](www.edcombs.com). *(Dkt. No.72)*

Over six hundred blank claim forms were returned to KCC. Class Counsel and KCC believe that the Settlement Class Members may have thought that the notice was mis-directed to them or had difficulties submitting claims. Class Counsel received a list from KCC of the blank Claim Forms and corresponding fax numbers of Settlement Class Members and looked up voice telephone numbers in order to contact those Settlement Class Members. Class Counsel identified and successfully contacted 428 Settlement Class Members. Class Counsel was unable to identify voice telephone numbers for 233 Settlement Class Members. (*Dkt. Nos. 92, 93*)

**One** objection was submitted by a Class Member. *(Dkt. No. 70)* **Eighteen** persons/entities submitted requests for exclusion. *(Dkt. Nos. 73-87, 89-92)* A total of 10,412 Settlement Class Members submitted valid and timely claim forms representing 72,848 fax

transmissions, either postmarked or submitted online through a dedicated website by March 10, 2015. There were 36 late claims submitted representing 155 transmissions.[1] *(Dkt. No. 92)* The parties request that the late claims be allowed.

## I.   OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT.

Plaintiff filed this action against Defendant alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and common law conversion and sought damages individually and on behalf of putative classes.

The parties conducted informal discovery, which included details of the number of faxes that were sent and the number of recipients of the junk faxes. Defendant also provided financial information and insurance policies and correspondence with their insurance carriers. Class Counsel reached out to defendant's insurer, Continental Casualty Company ("Continental") disputing its position on coverage. The parties negotiated both in person and telephonically prior to participating in a settlement conference presided over by this Court. While the settlement conference was unsuccessful, the parties continued to work together and with counsel for Continental toward a resolution of this case and ultimately were successful in reaching a settlement agreement. The parties negotiated the settlement at arms-length and in good faith.

The Agreement was subsequently presented to the Court for preliminary approval. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

---

[1] If the late claims are allowed, there would be a total of 10,448 claims for 73,003 transmissions.

II.     **THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT.**

   A.     **The Preliminary Approval Order.**

On December 8, 2014, this Court entered an order granting preliminary approval of the Agreement reached between the parties.  In the Preliminary Approval Order ("Order"), the Court specifically found that the proposed terms of the Agreement satisfied all of the elements of Federal Rule of Civil Procedure 23(a) and 23(b)(3).  The Order further established a procedural framework for the final approval of the Agreement.  The Order required that notice be sent to the members of the Class that was conditionally certified by the Court, set deadlines and procedures for submission of claims, requests for exclusion, and objections to the settlement, and set a April 30, 2015 final approval hearing.

   B.     **The Value of the Agreement.**

Plaintiff, Defendant and Continental entered into a class action Settlement Agreement. Specifically, the terms of the Agreement are as follows:

   1.     Settlement Fund. Subject to Court approval, Continental and InCrowd shall collectively fund the creation of a $375,000 Settlement Fund.  The Settlement Fund shall be distributed as follows:

   (a)     Payment of $2,500 to Plaintiff, as an incentive award for his services as a class representative, and in addition to his recovery as a Settlement Class member.

   (b)     Payment of attorney's fees in the amount of $73,750, which represents 25% of the Settlement Fund, after deduction of notice and administrative expenses to Plaintiff's Counsel.[2]

---

[2] Plaintiff filed a fee petition.  (*Dkt. No. 88*)

4

(c)     Reasonable costs of notice and administration of the Settlement up to a maximum of $80,000.  Any notice and administrative expenses in excess of $80,000 shall be paid solely by InCrowd, and shall not reduce the Settlement Fund.

(d)     After payments set forth in subparagraphs (a) - (c) of this paragraph, the balance of the Settlement Fund shall be divided *pro rata* up to a maximum of $500 per facsimile transmission as identified on the Fax List.  Each facsimile transmission accounts for one pro rata distribution of the Settlement Fund.  Each facsimile transmission is worth approximately $3.00.[3] Settlement Class Members shall be paid by check void 60 days after the date it is issued.

2.     <u>Uncashed Settlement Checks/Undistributed Settlement Funds</u>.  Within 30 days following the last void date of the checks issued to Settlement Class members for payment of claims the Settlement Class Administrator will report to the Parties if there are any uncashed checks or unclaimed or undistributed settlement funds.  Based on current calculations, all of the settlement funds will be distributed with only a small amount of remaining funds (due to rounding).  In the event that there are additional undistributed funds in the Settlement Fund due to uncashed settlement checks after all payments required under this Agreement are made, the parties will submit proposals to the Court for equal distribution of such remaining funds to a *cy pres* recipient.   Any payment to a *cy pres* recipient will occur not less than 30 days after the expiration of the void date on the settlement checks.

3.     <u>Attorney's Fees and Costs</u>.   InCrowd and Continental agree not to oppose Class Counsel's request for attorney's fees in the amount of $73,750, to be paid from the Settlement Fund.  The attorney's fees sought represent 25% of the Settlement Fund, after

---

[3] If the late claims are allowed, each facsimile transmission would be worth approximately $2.99.

deduction of notice and administrative expenses. Class Counsel filed a petition for attorney's fees. (*Dkt. No. 88*)

Notice and administrative expenses in this case are $80,000. (*Dkt. No. 92*) In *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) and *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 214), the Seventh Circuit held that administrative expenses should come off the top of the settlement fund, prior to calculating attorney's fees. In accordance with Seventh Circuit precedent, Class Counsel respectfully requests $73,750 ($375,000 - $80,000 = $295,000; $295,000 x 0.25 = $73,750).

        4.     <u>Incentive Award to Plaintiff</u>. Plaintiff seeks an incentive award in the amount of $2,500. Plaintiff pursued claims on behalf of a class with a risk of non-recovery. Plaintiff communicated regularly with counsel, monitored the progress of the case, reviewed pleadings and other documents, and participated in settlement discussions. Similar incentive awards have been approved in other TCPA settlements. *Gress v. Chiropractors Buying Group, Inc.*, 10 C 3421 (N.D. Ill.) (*Dkt. No. 84*) ($5,000 incentive award to plaintiff); *Bearing Brokers, Inc. v. Gaddis, Inc.*, 10 C 5500 (N.D. Ill.) (*Dkt. No. 104*) ($4,500 incentive award to plaintiff); *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.*, 12 C 780 (N.D. Ill.) (*Dkt. No. 73*) ($2,000 incentive award to plaintiff); *Richard Wade Architects, P.C. v. Engineering Services and Products Company*, 11 C 9251 (N.D. Ill.) (*Dkt. No. 58*) ($3,000 incentive award to plaintiff).

**C.**      **One Objection Was Received.**

The objection of Ann D. Gracer, Ph.D. was filed with the Court. (*Dkt. No. 70*) Dr. Gracer's objection objects to the amount of money set aside to the settlement and its proposed distribution. Dr. Gracer also objects on principle and provides a commentary on class actions.

As set forth in the preliminary approval motion, InCrowd is a young corporation with limited assets. It is certain that continued protracted litigation and/or a class judgment entered against it would terminate InCrowd's business. InCrowd's assets include a professional liability insurance policy provided by Continental. Litigation with Continental was imminent and would be risky to both Plaintiff, because coverage was questionable, and to InCrowd, due to its compromised financial condition.

Class Counsel negotiated with InCrowd and Continental to devise a comprehensive settlement that confers the maximum possible economic relief to all class members. The proposed class settlement provides substantial and immediate relief to Settlement Class Members that would not have otherwise been achieved without the settlement.

Although InCrowd's potential liability (in the event judgment is entered in plaintiff's favor) in this case exceeds $651 million, a review of defendant's financials easily shows that they could *never* satisfy a judgment entered in that amount. A judgment that is uncollectible is of no value to a plaintiff, his class or his counsel.

In negotiating the proposed settlement, Class Counsel reviewed and evaluated InCrowd's financial statements, and sought additional explanation from defendant's counsel regarding risks and factors affecting InCrowd's finances, and considered all of the information provided in arriving at a settlement amount that would most effectively compensate the class without pushing InCrowd out of business and jeopardizing the ability of the class to collect on the

settlement.  This objection should be overruled.  The parties propose that Dr. Gracer be paid her settlement share.[4]

The best evidence of the reasonableness of the settlement is a comparison of other similar settlements.  This is not only an objective analysis, but is also an easily verifiable one; all of the settlements have been judicially approved and are a matter of public record.  The amount per claim/per fax transmission in this case is in line with another TCPA junk fax settlement approved by another Court within this District, where the defendant had extremely limited resources but had sent several hundred thousand junk faxes.  *Wood Dale Chiropractic, Ltd. v. DrFirst.com, Inc.,* 12 C 7278 (N.D. Ill.) ($16.02 per fax transmission) (*Dkt. Nos. 73, 77*).  Counsel for Dr. Pollack represented the Plaintiff and settlement class in this case.

### D.    Eighteen Requests for Exclusion Were Received.

There were eighteen requests to opt out of the settlement from Class Members: Eric W. Bridges, M.D. PLLC, Crisp Regional Dialysis, Kirshner Spine Institute, Crystal Coast Podiatry, PLLC,  T. Kevin Braswell M.D., PA, Dr. Ashu P. Mehta - Anne Arundel Rheumatology, Physician's HealthSource, Inc., Therese M. Scott, D.O., Family Practice Associates, Center for Healing and Happiness, Lutheran Home Care and Hospice, Inc., United States Department of Veterans Affairs, Miller Chiropractic Clinic and Madelaine M. Stout D.C., Russell M. Holstein Ph.D., LLC, St. Louis Heart Center, Inc., Aris N. Jacob, M.D., P.A., Landry & Lechtenberg, LLC, and Boshra G. Zakhary, M.D., F.A.C.C., P.C.  (*Dkt. Nos. 73-87, 89-91*).  This represents 0.004% of the Settlement Class and should be viewed as an endorsement of the Agreement by

---

[4]  Allowing the claim of the objector would increase the total number of claims to 10,449 that account for 73,005  transmissions.

the Class.

### III. THE COURT SHOULD GRANT FINAL APPROVAL TO THE AGREEMENT.

The Agreement satisfies all the requirements of Rule 23.

#### A. Rule 23(a)(1) - The Class Is So Numerous That Joinder Of All Members Is Impracticable.

InCrowd represents that, based on a review of its records, and the invoices and other documents it received from the third-party fax broadcaster, approximately 1,303,287 facsimiles were sent to approximately 427,119 unique fax numbers during the Class Period. Based on these records, InCrowd provided a list of fax numbers and the corresponding number of transmissions sent to each fax number (the "Fax List."). After duplicates were removed and formatting issues were resolved, The Fax List identified 426,772 unique fax numbers. (*Dkt. No. 71*)

KCC sent the notice and claim form approved by the Court by facsimile. In sum, after completion of the fax notice, 239,065 fax numbers from the Fax List were successfully sent the Class Notice and Claim Form by facsimile. KCC also set up a website, www.InCrowdFaxSettlement.com, on which the Class Notice (fax and full versions), Preliminary Approval Order, and Settlement Agreement, excluding exhibits, were posted. (*Dkt. No. 71*) Finally, the full Class Notice and Settlement Agreement, excluding exhibits, were posted on www.edcombs.com. (*Dkt. No. 72*)

The Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also, Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger

should meet the test of Rule 23(a)(1) on that fact alone."). The number of settlement class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

**B.      Rule 23(a)(2) - The Claims Of The Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members").

In the present case, the claim arose from common questions: Whether Defendant engaged in a pattern of sending unsolicited fax advertisements; whether by doing so it violated the TCPA; whether defendant engaged in unfair acts and practices in violation of ICFA; whether defendant converted the property of plaintiff; and the manner in which defendant compiled or obtained their list of fax numbers. These common questions satisfy Rule 23(a)(2).

**C.      Rule 23(a)(3) - Named Plaintiff's Claims are Typical Of the Claims Of The Class Members.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993) ("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where

the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

In this case, typicality is inherent in the class definition. Each of the Class Members has been subjected to the same practice as the Plaintiff, namely they are persons and entities with fax numbers who on or after October 24, 2009 to October 24, 2013, were sent faxes by or on behalf of InCrowd, Inc., promoting its goods or services for sale and which do not contain an opt out notice as described in 47 U.S.C. § 227. Rule 23(a)(3) is plainly satisfied in this case.

**D.      Rule 23(a)(4) - Plaintiff and Class Counsel Have Fairly And Adequately Protected The Interests Of The Class.**

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in the Declaration of Daniel A. Edelman (Appendix B), Plaintiff's counsel is experienced in class action litigation. In addition, Plaintiff does not have any interests in conflict with the Class Members. Therefore, the named Plaintiff and his counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

**E.      The Class Is Appropriate Pursuant to Rule 23(b)(3).**

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Because the claims at issue address

11

the alleged practice of Defendants in sending unsolicited advertising facsimiles, there are no individual issues and common questions predominate. A class action presents a superior method to fairly and efficiently adjudicate all claims of the Class in this case, within the meaning of Rule 23(b)(3). The Agreement provides Class Members the opportunity to obtain a portion of the statutory damages provided for by the TCPA without the filing of numerous identical lawsuits.

### F.    The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1.    The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2.    The complexity, length, and expense of continued litigation;

3.    The amount of opposition to the settlement among class members;

4.    The presence of collusion in gaining a settlement;

5.    The stage of the proceedings; and

6.    The amount of discovery completed.

*Id.* (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)). The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

Plaintiff believed that it had a strong chance of prevailing if this case had gone to trial. Defendant disputed plaintiff's claims and believe that they had strong defenses to plaintiff's claims, including the fact that it did not have transmission reports form the fax broadcaster to show to whom its advertising faxes were sent. Regardless of defendant's potential defenses, the defendant's financial condition and their longevity were extremely important factors in terms of resolving this case. Continued and protracted litigation against InCrowd and/or a class judgment entered against InCrowd would terminate its business.

Class Counsel reviewed defendant's financial information, along with the relevant insurance policies, and correspondence with defendant's insurance carriers. Class Counsel disputed the coverage position taken by Continental. The parties worked with counsel for Continental in reaching a comprehensive settlement that confers economic relief to all settlement class members.

Because InCrowd's limited financial resources was a major factor in the parties' settlement negotiations, InCrowd is willing to produce documentation demonstrating its inability to fund a larger settlement to the court for *in camera* inspection upon request.

In order to avoid the uncertainty presented by any litigation, including any insurance declaratory judgment action, the parties and Continental agreed to settle this dispute

The arguable strength of the Class's claims compare favorably to the terms of the settlement, and the availability of any recovery to the Class Members, set forth above, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor.

The settlement easily satisfies the third *GE Capital* factor because only 15 Class Members have elected to exclude themselves from the settlement and 1 Class Member objected to the settlement. There is no evidence of any collusion in reaching the settlement. To the contrary, the above-described payment amounts to Plaintiff and Class Counsel compare favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor. Settlement Class Members will receive a recovery of approximately $3.00 per fax transmission. There was a substantial risk that any judgment entered in this case would be uncollectible.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this settlement in light of the stage of pre-trial proceedings and the discovery completed to date. The parties conducted informal discovery, which included the number of unsolicited advertising faxes sent by InCrowd and the number of unique recipients of those junk faxes. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560 (N.D. Ill. 2011)(the pertinent inquiry is not whether formal discovery has occurred but rather what facts and information have been provided). Defendant provided financial information, insurance policies and correspondence with their insurance carriers. Class Counsel disputed Continental's coverage position.

The parties and Continental negotiated both in person and telephonically prior to participating in a settlement conference presided over by this Court. Although the settlement conference before this Court was unsuccessful, the parties continued to work together and with counsel for Continental toward a resolution of this case and ultimately were successful in reaching a settlement agreement. Given the stage of proceedings and the informal discovery conducted, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

14

IV.     **<u>CONCLUSION</u>**.

For the foregoing reasons, Plaintiff individually, and as representative of the Settlement

Class of similarly situated persons, by Class Counsel, request that this Court grant final approval of

the Agreement and enter the parties' proposed final approval order, attached hereto as <u>Appendix A</u>.

Respectfully submitted,

<u>s/ Heather Kolbus</u>
Heather Kolbus

Daniel A. Edelman
Heather Kolbus
Edelman, Combs, Latturner & Goodwin, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

### CERTIFICATE OF SERVICE

I, Heather Kolbus, certify that on April 10, 2015, I caused the foregoing document to be filed via the Court's CM/ECF system, which will cause notification of such filing to be sent to the following:

David M. Poell (DPoell@sheppardmullin.com)
David S. Almeida (dalmeida@sheppardmullin.com)
Sheppard Mullin Richter & Hampton LLP
70 W. Madison Street, 48th Floor
Chicago, IL 60602

Daryl Schumacher (dschumacher@ksblegal.com)
Kopecky Schumacher Bleakley Rosenburg, P.C.
203 N. LaSalle Street, Ste. 1620
Chicago, IL 60601

I, Heather Kolbus, further certify that on April 10, 2015, I caused the foregoing document to be served, via US Mail, upon the following parties:

Anne D. Gracer, PhD
67-24 165th Street
Fresh Meadows, NY 11365

s/ Heather Kolbus
Heather Kolbus

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)